*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0273p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KENNETH C. VOYTICKY,

        *Plaintiff-Appellant,*

   *v.*

VILLAGE OF TIMBERLAKE, OHIO, et al.,

        *Defendants-Appellees.*

No. 04-3252

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-02276—John R. Adams, District Judge.

Argued: April 21, 2005

Decided and Filed: June 22, 2005

Before: KENNEDY and MOORE, Circuit Judges; RESTANI, Judge.[*]

_____

## COUNSEL

**ARGUED:** Charles K. Webster, ANDRECHICK & WEBSTER, Cleveland, Ohio, for Appellant. Nick Tomino, TOMINO & LATCHNEY, Medina, Ohio, for Appellee. **ON BRIEF:** Charles K. Webster, ANDRECHICK & WEBSTER, Cleveland, Ohio, David M. Maistros, Chagrin Falls, Ohio, for Appellant. Nick Tomino, TOMINO & LATCHNEY, Medina, Ohio, for Appellee.

_____

## OPINION

_____

      KENNEDY, Circuit Judge. Appellant Kenneth Voyticky appeals from the district court's dismissal of some of his claims due to a lack of subject matter jurisdiction and its grant of summary judgment to Defendants on his remaining claims in which he alleged violations of his constitutional rights and seeks recovery pursuant to 42 U.S.C. § 1983. We reverse the dismissal of Plaintiff's claims for lack of subject matter jurisdiction and grant Defendants summary judgment on all claims as sought in their motion.

---

[*]The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

**BACKGROUND**

Plaintiff is a former police lieutenant of the Village of Timberlake, Ohio, a community of approximately 800 people. While employed by the village, Plaintiff was active in a voluntary association of Timberlake police officers. He was one of several officers authorized to make deposits and expenditures of the group's funds. In 1997, the association raised money by producing and selling telephone directories to village residents for three dollars. Local businesses paid to place advertisements in the directories.

In 2000, Plaintiff assumed responsibility for a new directory. Deposits for new directories were left at the police station while Plaintiff was still employed and deposited by him in the association account. Deposits made into the account included at least one check made payable to the Village of Timberlake. Plaintiff left the police force on June 28, 2001. Around the same time, the police association disbanded, and it decided to give directories away free even though several villagers had already paid for them.

At least two businesses claimed to have paid Plaintiff money for advertisements that did not appear in the new directory. These businesses whose advertisements were not included and several people who claimed to have paid to purchase the directory complained to the police department and requested refunds from the Village.

Defendant Graham, the chief of police, directed defendant Clifford, a Timberlake officer, to investigate Plaintiff's handling of directory monies. Clifford investigated and reported that at least two businesses claimed to have paid Plaintiff for advertisements, that those advertisements had not been printed in the directory, and that several residents claimed to have paid three dollars for directories either directly to Plaintiff or by leaving their money at the police station. The investigation also revealed that Plaintiff had deposited a small sum into a bank account entitled "Timberlake Police Special Fund," and that after he had resigned, Plaintiff had withdrawn all money ($311.46) from the account.

The officer informed the chief of his findings. The chief informed the village solicitor, who wrote Plaintiff on several occasions for an explanation concerning the alleged missing funds. Plaintiff emailed the solicitor and requested receipts or cancelled checks for those people that requested refunds.[1] The solicitor provided Plaintiff a list of people that had complained. The village solicitor did not receive a further response from Plaintiff, nor did he receive any accounting of the funds. He so informed Chief Graham on April 12, 2002.

On April 30, 2002, Graham, Clifford, and another police officer presented their findings to a magistrate judge in Willoughby Municipal Court. The magistrate judge conducted a probable cause hearing and determined that sufficient probable cause existed to issue an arrest warrant for Plaintiff for the offense of theft in office in violation of Ohio Revised Code § 2921.41. Defendant Clifford signed a complaint charging Plaintiff with the violation.

Plaintiff was arrested at his new place of employment. The media covered Plaintiff's arrest and arraignment. Charges against Plaintiff were eventually dismissed for lack of probable cause. Plaintiff then sued Sam Santangelo, Jr., the Mayor of Timberlake; Graham; and Clifford, alleging that they were guilty of malicious prosecution, abuse of process, false arrest, defamation, intentional infliction of emotional distress, violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment

---

[1]Because Plaintiff collected the money, he, no doubt, knew that, in most circumstances, people had paid in cash, meaning that his request for cancelled checks would not be productive. There is no indication in the record whether Plaintiff gave people who paid cash a receipt, but Plaintiff testified at his deposition that some villagers simply left money at the police station when he was not present.

rights, and conspiracy to deprive him of his rights under the U.S. Constitution.  He also asserted that the Village of Timberlake was municipally liable for the torts.  Jurisdiction was based on 42 U.S.C. § 1983.

Defendants moved for summary judgment on all claims.  The district court dismissed Plaintiff's claims in two opinions.  In its first opinion, the district court identified Plaintiff's claims for abuse of process, defamation, and intentional infliction of emotional distress as solely state law claims.  The district court found that it lacked subject matter jurisdiction over those claims because Plaintiff did not specifically invoke the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  It then granted Defendants summary judgment on Plaintiff's claims for false arrest, malicious prosecution, and municipal liability.  In a second opinion, upon Defendants' motion for reconsideration, and after briefing by both parties, the district court granted Defendants summary judgment on the remaining conspiracy claim.

Plaintiff appeals the district court's dismissal for lack of subject matter jurisdiction of the claims it identified as state law claims.  He asserts both in his brief and at oral argument that all of his claims are federal constitutional claims.  He also argues that should this court find that some of his claims are state law claims, the district court erred in dismissing them.  He also asserts that material disputes of fact exist that preclude the district court's grant of summary judgment.[2] Defendants respond, arguing that even if the district court erred in holding it did not have supplemental jurisdiction over some of Plaintiff's claims, Defendants deserve judgment as a matter of law on all claims.

## ANALYSIS

A.       The District Court's dismissal of Plaintiff's state law claims

Relying on this court's opinion in *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244 (6th Cir. 1996), the district court determined that because Plaintiff never identified which claims in his complaint were state law claims, nor did he specifically invoke jurisdiction pursuant to 28 U.S.C. § 1367, it did not have subject matter jurisdiction to address state law claims.  Consequently, the district court dismissed Plaintiff's claims for abuse of process, defamation, and intentional infliction of emotional distress because it determined that those claims were solely state law claims.  We review a district court's decision that it lacked subject matter jurisdiction de novo.  *Anderson v. Charter Township of Ypsilanti*, 266 F.3d 487, 492 (6th Cir. 2001) (citing *Green v. Ameritech Corp.*, 200 F.3d 967, 972 (6th Cir. 2000)).

We do not believe *Musson Theatrical* can be read in the manner the district court read it.  Plaintiffs do not need to specifically plead the supplemental jurisdiction statute, nor do they need to specifically identify state law claims as such if the cause of action obviously exists under state law.  *Musson Theatrical* stands for the proposition that where a plaintiff does not mention state claims in a federal complaint at all, and where a plaintiff files those state claims in a separate and parallel suit in a state court, a federal court may not address those claims on the basis of supplemental jurisdiction.  *See Musson Theatrical*, 89 F.3d at 1252-54.  ("Modern pleading rules may be lax, but they still require that a party plead a claim before the court decides it.")  Supplemental jurisdiction, in general, allows a plaintiff to include claims over which a federal court would not normally have jurisdiction provided that that plaintiff's complaint properly invokes the district court's jurisdiction and that the other claims: "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.

---

[2]In his brief on appeal, Plaintiff does not assert that the district court incorrectly decided his conspiracy claim. Plaintiff has, therefore, waived that claim on appeal.

Where, as here, a plaintiff pleads violations of the U.S. Constitution, unambiguously federal claims over which a district court has jurisdiction pursuant to 28 U.S.C. § 1983, a district court has supplemental (and, hence, subject matter) jurisdiction to address additional state law claims related to the federal claims. To the extent that the district court determined that it lacked subject matter jurisdiction over Plaintiff's state law claims, it erred. Since the Defendants requested summary judgment on all claims, however, and since the parties on appeal and in the district court have addressed both the state and the federal claims, the district court's error was harmless in the sense that we need not remand to the district court to correct it. For the reasons that follow, we agree that Defendants are entitled to summary judgment or dismissal as to all claims.

B.    Summary Judgment Standard and Standard of Review

This court reviews a grant of summary judgment de novo. *Adams v. City of Auburn Hills*, 336 F.3d 515, 518 (6th Cir. 2003). For the purposes of this appeal, we construe the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in his favor. *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)). Granting summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A dispute over a material fact will only be genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

C.    Plaintiff's malicious prosecution claim

Malicious prosecution claims can be brought under either federal or state law. *See Thacker v. City of Colombus*, 328 F.3d 244, 258-59 (6th Cir. 2003). It is unclear from the complaint whether Plaintiff intended to bring a federal or a state claim for malicious prosecution. We, therefore, address the standards for both types of claims in determining if summary judgment is appropriate. In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution. *Id.* at 259. Under Ohio law, the elements of malicious prosecution are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. General Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990).

Plaintiff does not dispute that the city received complaints from citizens that they had paid for directories or advertisements. Defendants' affidavits that such complaints by identified businessmen in the community were made is only controverted by Plaintiff's affidavit that he did not receive the advertisement money and that he deposited the payments for the directory to the association bank account. He also does not controvert Defendants' affidavits that he was asked to respond in writing to the allegations of the citizens and did not do so except to ask for cancelled checks. He now acknowledges that he has subsequently repaid some unidentified citizens their three dollar directory fee. Nor does plaintiff dispute what evidence was given to the magistrate. His principal argument is that he was wrongfully charged on April 30, 2002 with a violation of Ohio Revised Code § 2921.41 for theft in office as he was no longer a police officer having resigned on June 28, 2001. Joint Appendix at 9, 140. He asserts that a charge of theft would have been more appropriate than a charge of theft in office.

Defendants assert that Plaintiff received the funds or was alleged to have received the funds while a police officer and that his receipt and control over the monies occurred while he was a public official. They also assert that he used his office to receive the money. Such conduct would appear

to violate O.R.C. § 2921.41(A)(1).[3] Moreover, even if Defendants lacked probable cause to charge Plaintiff with theft in office, there was clearly sufficient probable cause to charge Plaintiff with theft. We have held that where no probable cause exists to arrest a plaintiff for a particular crime, but that probable cause exists to arrest that plaintiff for a related offense, the plaintiff cannot prevail in a suit alleging wrongful arrest brought pursuant to 42 U.S.C. § 1983. *See Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997).

While Plaintiff in his affidavit in opposition to the motion for summary judgment and in his deposition swears he used all money he received and monies in the association account to publish the new directories, Plaintiff has not offered evidence to contravert Defendants' evidence that they had probable cause for their actions. They brought their evidence to a magistrate judge who, after conducting a probable cause hearing, issued an arrest warrant. Additionally, Plaintiff has not offered any evidence to show that Defendants acted with malice in charging Plaintiff. Under either federal or state law, then, Defendants are entitled to summary judgment on this claim.

D.      Plaintiff's abuse of process claim

This court has never specifically determined whether a claim for abuse of process is a cognizable constitutional claim that can be redressed pursuant to § 1983. *Cf. Loch v. Watkins*, 337 F.3d 574, 577 (6th Cir. 2003) (describing, without discussion, a § 1983 claim as an abuse of process claim); *Eldridge v. Gibson*, 332 F.3d 1019, 1020 (6th Cir. 2003) (discussing a district court's decision to vacate an earlier opinion to consider a § 1983 complaint for abuse of process). We again find it unnecessary to rule on that question in this case. If such a claim is cognizable as a federal constitutional claim, however, the elements necessary to prove it would likely mirror those of state law. *See Cook v. Sheldon*, 41 F.3d 73, 79-80 (2nd Cir. 1994). Under Ohio law:

> The three elements of the tort of abuse of process are: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Schaffer, & Rowe Co. et. al.*, 626 N.E.2d 115, 116 (Ohio 1994). While no party disputes that Plaintiff was subjected to a legal proceeding, Plaintiff has proffered no evidence, nor does he suggest or argue, that the proceeding was "perverted" for the achievement of an "ulterior purpose." *Id.* In fact, the evidence indicates that Defendants had precisely the opposite intent. Defendants intended to charge and convict Plaintiff of the crime of theft in office. Defendants, therefore, are entitled to summary judgment on this count regardless of whether it was a federal or a state claim.

E.      Plaintiff's false arrest claim

False arrest claims can be brought under either federal or state law. *See generally Thacker*, 328 F.3d at 258. It is unclear from his complaint whether Plaintiff intended to bring a federal or a state claim for false arrest. We, therefore, address the standards for both types of claims in determining if summary judgment is appropriate. A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir.1999)). An arrest pursuant to a facially valid warrant is normally a complete defense to a federal

---

[3]Ohio Revised Code § 2921.41(A)(1) prohibits public officials from "us[ing their] office in aid of committing the offense."

constitutional claim for false arrest or false imprisonment made pursuant to § 1983.[4]  *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979).  Similarly, under Ohio law, an arrest warrant, "issued by a court, unless utterly void is a complete defense to an action for false arrest or false imprisonment." *McFarland v. Shirkey*, 151 N.E.2d 797, 802 (Ohio Ct. App. 1958).

In this case, Plaintiff does not dispute that he was arrested pursuant to an arrest warrant.  He did dispute, however, whether the warrant was supported by probable cause as he was not a public official at the time he committed the crime.  Because we have determined that Defendants had probable cause, their reliance on a warrant that accused Plaintiff of committing theft in office was justified.  Plaintiff's claim fails under either federal or Ohio law and summary judgment for Defendants is, therefore, appropriate.

F.      Plaintiff's defamation claim

Absent a further injury, such as loss of a government job or loss of a legal right or status, defamation, by itself, does not constitute a remediable constitutional claim.  *Paul v. Davis*, 424 U.S. 693, 701-03 (1976); *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993).  Thus, Plaintiff's defamation claim can only be an Ohio law claim.  Under Ohio law, to prove a claim of defamation:

> First, there must be the assertion of a false statement of fact; second, that the false statement was defamatory; third, that the false defamatory statement was published by defendants; fourth, that the publication was the proximate cause of the injury to the plaintiff; and fifth, that the defendants acted with the requisite degree of fault.

*Celebrezze v. Dayton Newspapers, Inc.*, 535 N.E.2d 755, 759 (Ohio Ct. App. 1988) (citing *Dupler v. Mansfield Journal Co.*, 413 N.E.2d 1187 (Ohio 1980)).  Plaintiff failed to place in the record any statements that Defendants published, much less any published statements that were false. Defendants, therefore, are entitled to summary judgment on this claim.

G.      Plaintiff's intentional infliction of emotional distress claim

Like defamation, intentional infliction of emotional distress, by itself, cannot amount to a constitutional violation.  This court has affirmed damages for emotional and mental anguish caused by a due process or other constitutional violation brought pursuant to § 1983.  *See Chatman v. Slagle*, 107 F.3d 380, 384-85 (6th Cir. 1997) (allowing recovery for emotional distress after an unlawful search); *Meyers v. City of Cincinnati*, 14 F.3d 1115 (6th Cir.1994) (fireman who was forced to retire in violation of his first amendment rights could recover, in part, for mental anguish, humiliation, and loss of reputation).  We have not, however, ever held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remediable pursuant to 42 U.S.C. § 1983, and Plaintiff has not cited to any authority that would support such a claim.  Thus, we evaluate Plaintiff's claim of intentional infliction of emotional distress as a state law claim. Under Ohio law, to support a claim of intentional infliction of emotional distress:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would

---

[4]A facially valid warrant is not always sufficient to avoid summary judgment in an action brought pursuant to § 1983 when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest or a search warrant provided that the misleading or omission information is critical to the finding of probable cause.  *See Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998); *United States v. Atkin*, 107, F.3d 1213, 1217 (6th Cir. 1997).  In this case, however, Plaintiff never alleges, much less offers evidence, that any of Defendants intentionally mislead the magistrate or that they omitted material information at the probable cause hearing.

entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America, et al.*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). Here, the conduct of which Plaintiff complains stems from his arrest and detention. Such routine conduct does not approach the high standard adopted by the Ohio Supreme Court. As such, Defendants are entitled to summary judgment on this claim.

H.      Plaintiff's claims under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution

Plaintiff asserts a claim that his Fourth Amendment rights were violated. The Fourth Amendment to the United States Constitution prohibits searches and seizures absent probable cause or a warrant based on probable cause. *See* U.S. CONST. amend. IV. Plaintiff has no viable Fourth Amendment claims beyond those he makes for false arrest and malicious prosecution. As such, because Plaintiff's claims on those counts fail, his Fourth Amendment claim also fails.

Plaintiff also claims that his Fifth and Fourteenth Amendment rights were violated. The Fifth Amendment, in relevant part, prohibits "deprivation of life, liberty, or property, without due process of law." U.S. CONST. amend. IV. The Fourteenth Amendment requires states to grant individuals due process of law. *See* U.S. CONST. amend. XIV, § 1. The only potential violations of due process possible in this situation relate to claims Plaintiff made separately in his complaint. Because Plaintiff fails to establish a claim under any of the other theories he offers, Plaintiff's Fifth and Fourteenth Amendment claims fail as well.

Finally, Plaintiff claims violations of his Sixth Amendment Rights. The Sixth Amendment protects criminal defendants during trial. *See* U.S. CONST. amend. VI. Plaintiff was arraigned, and charges against him were dismissed after a probable cause hearing. He does not point to any deficiency during any stage of those proceedings. Plaintiff was not subjected to any further legal process. His Sixth Amendment claims are not supported by any evidence in the record. All of Plaintiff's claims under this count fail and Defendants are entitled to summary judgment on this claim.

I.      Plaintiff's municipal liability claim

A municipality may be liable for a constitutional violation caused by individuals when those individuals acted pursuant to an official policy of the municipality. *See Monnell v. New York City Dept. of Social Services*, 426 U.S. 658, 691 (1978). For municipal liability to exist, however, a constitutional violation must take place. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.") Because we have determined that Defendants are entitled to summary judgment on all of Plaintiff's constitutional claims for want of a constitutional violation, Plaintiff's municipal liability claim must also fail. Additionally, Plaintiff never identified an official policy of the Village under which the individual Defendants are supposed to have acted. Absent such a policy, Plaintiff's claim fails. Summary judgment for the Village of Timberlake is appropriate on this claim.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court with respect to its dismissal of Plaintiff's claims for lack of subject matter jurisdiction, **REMAND** those claims with instructions to the district court to enter summary judgment for Defendants on those claims, and **AFFIRM** the district court's judgment with respect to Plaintiff's federal claims.