NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0515n.06

Case No. 22-3151

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 12, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CANDICE MARIE GRIESMAR, | ) |
| Plaintiff - Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) |
| | ) |
| CITY OF STOW, OHIO; OFFICER JASON BAILEY; LIEUTENANT HEATHER PRUSHA, | ) |
| | ) OPINION |
| Defendants - Appellees. | ) |
| | ) |

Before: MOORE, GIBBONS, and LARSEN, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Candice Griesmar sued Officer Jason Bailey, Lieutenant Heather Prusha, and the City of Stow, Ohio, under 42 U.S.C. § 1983 and Ohio law for her allegedly unlawful arrest and detention following a traffic stop. She initially sued in state court, but the defendants removed to federal court. Griesmar opposed removal, moving to either stay or dismiss her federal claims without prejudice and to remand the state-law claims, arguing that her case was primarily one of state law. The district court denied this motion. On cross-motions for summary judgment, the district court granted defendants' motion for summary judgment on the federal claims and remanded the remaining state-law claims to state court.

Griesmar now appeals the denial of her motion to stay or dismiss the federal claims without prejudice, the grant of summary judgment to defendants, and the denial of her summary judgment motion. Because the district court did not abuse its discretion in refusing to dismiss Griesmar's

federal claims without prejudice and properly granted defendants summary judgment on those claims, we affirm.

I.

Just before 1:00 a.m. on May 30, 2019, Candace Griesmar was pulled over on her way home from work. Officer Jason Bailey, a patrol officer, stopped Griesmar for allegedly speeding. (*Id.*) After an initial conversation about Griesmar's speed, Bailey returned to his vehicle and wrote her a citation for traveling at 56 miles per hour in a 35 mile-per-hour zone. When Bailey approached Griesmar's vehicle to serve her the citation, he asked about Griesmar's marijuana usage, explaining that he smelled the odor of marijuana coming from her vehicle. Bailey sought Griesmar's consent to search her vehicle. Griesmar responded that she "just wanted to go home," but Bailey told her that she could not leave because he was going to search her car. DE 1-2, Compl., Page ID 11. Bailey once again asked Griesmar about the source of the smell, and she admitted that there was leftover marijuana in the car's ashtray. She then showed him the old marijuana in the ashtray. Bailey ordered her to step out of the car, and she complied. Bailey advised dispatch that he was conducting a vehicle search, and Lieutenant Prusha arrived as backup shortly after.

During the search of Griesmar's vehicle, Bailey discovered suspected illicit materials in Griesmar's wallet: half of a pill wrapped in paper, two plastic bags containing pills, and a short cut-off section of a pink straw. Bailey turned to Griesmar, read her the *Miranda* warnings, and explained what he had found. Griesmar responded that the pills were prescribed medicine for migraines and muscle spasms, and the cutoff straw was used for nasally ingesting her migraine medicine. Bailey told Griesmar that she would have the opportunity to bring him the prescriptions for the medications but that the circumstances were suspicious given the way the pills were being

stored and the presence of the straw. Additionally, Griesmar could not remember the names of the medications or produce the prescriptions. Prusha used a database on her cellphone and identified the pills by their markings as oxycodone hydrochloride (a painkiller) and cyclobenzaprine hydrocholoride (a muscle relaxant). Bailey challenged Griesmar about the oxycodone, explaining that it is not used for migraines or muscle spasms. Griesmar responded that she also had a prescription for oxycodone to treat back pain from a car accident a month prior.

Bailey arrested Griesmar and transported her to jail. At 3:37 a.m., Griesmar arrived at the Macedonia jail and was booked. Later that morning, at 10:31 a.m., a municipal court judge arraigned Griesmar by video. Griesmar was charged with fifth-degree felony possession of drugs (for the oxycodone), first-degree misdemeanor possession of a dangerous drug (for the cyclobenzaprine), and minor misdemeanors of possession of marijuana and speeding. The judge explained the charges, their associated maximum penalties, and the pretrial schedule. The judge signed a pre-printed form that stated: "The court having reviewed the notarized affidavit in the case file finds probable cause to continue for preliminary hearing or felony status." DE 23-5, Stow Order, Page ID 445. The court then ordered that Griesmar be released on a $5,000 personal recognizance bond. The release authorization was processed later that afternoon, and Griesmar left the jail at approximately 3:30 p.m.

All charges were ultimately dismissed.

In May 2020, Griesmar filed suit in Ohio state court against the officers and the city. She alleged several claims: violation of her Fourth Amendment rights by the officers, violation of her Fourteenth Amendment rights by the city's failure to train the officers, false arrest and wrongful imprisonment under state law, and violations of the Ohio state constitution and public policy.

Griesmar sought money damages and declaratory and injunctive relief to end the allegedly unlawful practices that led to her arrest.

The defendants timely removed the case to federal district court. In federal court, Griesmar moved to stay determination of her § 1983 claims (or dismiss them without prejudice) and moved to remand the pendent state claims.[1] Griesmar argued that her state law claims predominated over her § 1983 claims and that her state-law claims presented novel questions of state constitutional law.

The court denied Griesmar's motion to stay. Noting that subject-matter jurisdiction was proper under 28 U.S.C. § 1331 and removal was timely, the district court explained its obligation to hear cases properly before it. The court reasoned that a stay would waste judicial resources, could potentially subject defendants to inconsistent judgments, and would be unjustified given the importance of the federal claims to the action. The court also explained that Griesmar's motion suggested that she was forum-shopping. Finally, the court rejected Griesmar's alternative motion to dismiss the federal claims without prejudice under Federal Rule of Civil Procedure Rule 41(a). It explained that under Rule 41(a), only entire actions can be dismissed without prejudice, not individual claims.

At a case management conference, the parties agreed to move forward with the summary judgment phase for Count I—the federal claim that the officers violated Griesmar's Fourth Amendment rights. Following the meeting, the defendants submitted (and the court and Griesmar apparently accepted) a proposal to deal with Count I first "to expedite resolution of the federal claims." DE 15, Proposed Disposition, Page ID 98-99; 08/06/2021 Case Management Meeting

---

[1] Although Griesmar's motion to stay refers to a single § 1983 claim, subsequent filings in the district court and before this panel indicate that she intended for the district court to stay (or dismiss without prejudice) both of her federal claims.

Minutes. The proposal explained that Count II—the *Monell* claim against the City of Stow for inadequate training and supervision—would not be the subject of any discovery and could be addressed by the court at a later date, if necessary. *Id.* The defendants' position was that there could be no viable *Monell* claim under Count II if Count I did not survive, so only Count I needed to be addressed at the outset. *Id.*

Following discovery on Count I, the parties filed cross-motions for summary judgment. The court granted summary judgment to the defendants on both federal claims. For Count I, the court found no constitutional violation at any stage of Griesmar's arrest or detention. With no constitutional violation, the court accordingly found that no *Monell* claim based on the same events could survive against the city. With both federal claims eliminated, the court declined to exercise supplemental jurisdiction over Griesmar's state-law claims and remanded them to state court. Griesmar timely appealed.

## II.

"We review for abuse of discretion a district court's ruling on a motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2)." *Maldonado v. Thomas M. Cooley L. Sch.*, 65 F. App'x 955, 956 (6th Cir. 2003); *United States v. One Tract of Real Prop.*, 95 F.3d 422, 425 (6th Cir. 1996). Abuse of discretion occurs when the court "relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 614 (6th Cir. 1998).

Ignoring the proper standard of review, Griesmar argues that the district court should have granted her motion to stay or dismiss without prejudice her federal claims and remand her state-law claims in the first instance. Griesmar reasons that her state-law claims predominate over her federal claims, requiring the court to abstain from exercising jurisdiction over the federal claims.

She asserts that the district court's refusal to abstain threatens federalism interests, particularly the interests of Ohio courts in interpreting the Ohio constitution. Alternatively, Griesmar argues that the district court should have dismissed the federal claims without prejudice. She reasons that the district court's determination of her federal claims on the merits has estoppel implications for her state-law claims, thereby denying the state court the right to interpret state law. Because Griesmar ultimately achieved remand of her state-law claims, we address only whether the district court abused its discretion in refusing to stay or dismiss without prejudice her federal claims.

First, we address the district court's refusal to stay Griesmar's federal claims. Griesmar does not contest that she raised federal claims—two of the five claims raised in her complaint were federal in nature. Nor does she contest that the district court had federal question jurisdiction over those claims and that the case was properly removed. Instead, Griesmar claims that the district court should have abstained from exercising jurisdiction over her § 1983 claims. However, she does not argue for the application of any specific abstention doctrine and offers no legal support for her demand beyond general concerns about federalism.

Without a good reason for abstention, we must uphold "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The district court had federal question jurisdiction over Griesmar's § 1983 claims, and it properly refused to abstain from addressing them. Additionally, Griesmar's federalism concerns are misplaced. The district court solely decided the *federal* claims that she raised. With the state-law claims now remanded, she will have adequate opportunity for Ohio courts to review her claims under state law. Although Griesmar argues that there will be estoppel implications from the district court's summary judgment order, that concern is overstated. If the Ohio constitution truly grants more rights than the federal constitution and the

defendants' actions violated those rights, as Griesmar claims, then the preclusive effect of the instant summary judgment decision would not eliminate her state constitutional claims. *See* Restatement (Second) of Judgments § 28 (1982) (providing exceptions to the general rule of issue preclusion, including issues of law when the claims are substantially unrelated or a new determination is warranted to avoid inequitable administration of the laws).

Next, we turn to the district court's refusal to dismiss the federal claims without prejudice. Because only entire "actions" can be dismissed under Rule 41(a), not just individual claims within an action, the court found that Griesmar could not voluntarily dismiss only her federal claims. The district court also noted that the request for dismissal without prejudice suggested impermissible forum-shopping by Griesmar.

The district court correctly applied Rule 41 and properly exercised its discretion regarding voluntary dismissal. Rule 41(a) allows only for dismissal of *actions*, not claims. Fed. R. Civ. P. 41(a). This is distinct from involuntary dismissal under Rule 41(b), where the defendant can move to dismiss "the action *or any claim* against it." Fed. R. Civ. P. 41(b) (emphasis added). This interpretation is counseled by both the plain text of the rule and circuit precedent.[2] *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1962); *Gibney v. State Farm Fire & Cas. Co.*, 549 F. App'x 488, 490 (6th Cir. 2013) (reiterating *Taylor*'s interpretation of Rule 41(a) as applying only to entire actions); *United States ex rel. Doe v. Preferred Care, Inc.*, 326 F.R.D. 462, 464 (E.D.

---

[2] In response, Griesmar argues that the district court should have remanded her state-law claims first and then applied Rule 41(a) to the federal claims that were before them because then the federal claims would have constituted the entire "action." This argument misunderstands the distinction between "claims" and "actions" and, even if it were legally sound, is not the kind of procedural gymnastics that parties can demand from district courts acting within their own discretion.

Ky. 2018) (collecting in-circuit district court cases treating Rule 41(a) as applying only to entire actions).

Even if the court were not bound by Rule 41(a), concerns about forum-shopping would have justified denial of the motion to dismiss without prejudice. Faced with motions for voluntary dismissal, courts may consider whether the plaintiff is attempting to "regain a state forum simply by deleting all federal-law claims from the complaint and requesting that the district court remand the case," and weigh such forum-shopping against their request. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Griesmar appears to be engaging in precisely these tactics, as she redoubles her assertion that she has the right to forum shop and then lays out a "hypothetical[]" scenario of refiling her federal claims "after the conclusion of the state case." CA6 R. 25, Appellant Br., at 22-23. Therefore, the district court properly weighed Griesmar's efforts to forum shop against her when it considered her motion to dismiss without prejudice.

With federal court established as an appropriate forum for Griesmar's federal claims, we now turn to their merits.

### III.

"We review a district court's grant of summary judgment de novo." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citing *Keith v. Cnty. of Oakland*, 703 F.3d 918, 923 (6th Cir. 2013)). A movant is entitled to summary judgment if the movant shows that there is no genuine dispute of any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If such a genuine dispute of material fact exists, we draw factual inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c). When there is video footage of the events, we view the facts in the light depicted by the video. *Scott v. Harris*, 550 U.S. 372, 381 (2007).

Griesmar's federal claims in this suit rest on 42 U.S.C. § 1983, which provides a cause of action for persons deprived of rights secured by the federal constitution when that deprivation takes place under color of state law. 42 U.S.C. § 1983. On appeal, Griesmar challenges the district court's disposition of her federal claims. The district court properly granted summary judgment to defendants on all federal claims, which we address in turn: first addressing her Fourth Amendment claims of warrantless arrest and improper judicial determination of probable cause, and then her *Monell* "failure-to-train" claim against the city.

A.

Claims for false arrest are cognizable under the Fourth Amendment. *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). When there are multiple possible charges against an individual, their arrest is valid if the facts known to the officers can support probable cause for *any* charge. *Howse*, 953 F.3d at 409; *Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004). Therefore, Griesmar's Fourth Amendment false arrest claim fails if the officers had probable cause to arrest her for any of the crimes at issue: speeding, possession of marijuana, or possession of other illicit substances.

Probable cause exists for an arrest when the facts and circumstances within the officer's knowledge are "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit

an offense." *Weser*, 965 F.3d at 513-14 (quoting *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)).

To begin, driving over the speed limit is a traffic violation and provides an officer with probable cause to stop a vehicle. *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008); *United States v. Carter*, 662 F. App'x 342, 346 (6th Cir. 2016). The district court concluded that Bailey had probable cause to pull over Griesmar for speeding based on his personal observation and radar readout. Griesmar challenges this determination, claiming that the district court improperly presumed Bailey's competence and truthfulness.

Griesmar presents no contrary evidence to create a genuine dispute of material fact. The video footage of Bailey's initial confrontation with Griesmar about her speeding indicates no denial that she was speeding. When asked if she knew how fast she was travelling, Griesmar said that she did not know, and when the officer asked if she "was just not paying attention," Griesmar responded, "I guess." DE 19-2, Bailey Body Camera Footage, 00:31-1:10. Her deposition testimony further creates no genuine dispute of material fact as Griesmar did not deny speeding and instead continued to say that she did not know how fast she was traveling. Without a genuine dispute of material fact, the district court properly found that Bailey had probable cause to believe that Griesmar had been speeding and thus probable cause for the traffic stop.

Next, the odor of marijuana provided Bailey both reasonable suspicion to continue the traffic stop and probable cause to search Griesmar's vehicle. *See Carter*, 662 F. App'x at 345-47 (finding probable cause to search a vehicle based on the odor of marijuana detected by an officer during a traffic stop for speeding); *see also United States v. Stevenson*, 43 F.4th 641, 648 (6th Cir. 2022) (explaining that the Fourth Amendment permits an officer who smells marijuana during a traffic stop to detain the driver in order to investigate the source of the odor). Then, based on his

conversation with Griesmar, Bailey further developed probable cause to arrest her for possession of marijuana. Griesmar admitted that there was used marijuana in the car, removed the ashtray, and handed it to the officer to show him the leftover marijuana. These facts are "sufficient to warrant a prudent person in believing" that Griesmar committed the crime of possession of marijuana. *Weser*, 965 F.3d at 513. Because Griesmar's arrest was supported by probable cause for the crime of possession of marijuana, she has demonstrated no violation of her Fourth Amendment rights.[3]

Possession of marijuana was not the only crime for which the officers had probable cause to arrest Griesmar. In the search of Griesmar's vehicle, Prusha and Bailey discovered pills in plastic baggies and a small section of cut-off straw consistent with illicit drug use. Given the suspicious way the pills were contained, Griesmar's inability to remember the names of the medications or produce prescriptions, the straw that she claimed was used to nasally ingest the medications, and the presence of other drugs in the car, Bailey and Prusha acted as reasonable, prudent officers in believing that, under the facts known to them, Griesmar's possession of the controlled substances was illegal. *See Cain v. Irvin*, 286 F. App'x 920, 925 (6th Cir. 2008) (finding probable cause to arrest individual for possession of controlled substances when she was unable to produce a prescription).

Because the officers had probable cause to arrest Griesmar for multiple violations of law, Griesmar's claim of false arrest under federal law fails.

---

[3] Our analysis of whether an arrest is supported by probable cause remains the same, even if state law is more protective of individual rights. *Virginia v. Moore*, 553 U.S. 164, 173 (2008). While Griesmar's Fourth Amendment rights were not violated by this arrest, we do not address her rights under the Ohio Constitution.

B.

Next, Griesmar challenges the judicial determination of probable cause made during her detention at the jail. She first claims that her arraignment did not comply with the federal promptness requirement. She further argues that a judicial determination of probable cause did not occur at her arraignment because probable cause was not discussed or even mentioned. Although the municipal court judge signed a pre-printed form stating that "[t]he court having reviewed the notarized affidavit in the case file finds probable cause to continue for preliminary hearing or felony status," Griesmar argues that this did not amount to a probable cause determination. CA6 R. 25, Appellant Br., at 26-27; DE 23-5, Stow Order, Page ID 445.

"[J]udicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with [the Fourth Amendment's] promptness requirement." *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). If a plaintiff seeks to challenge the promptness of a judicial determination made within 48 hours of arrest, he or she must "prove that his or her probable cause determination was delayed unreasonably." *Id.* Examples include "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *Id.*

Here, a judicial determination was provided within nine hours of Griesmar's arrest, and the entire length of her detention was less than fifteen hours. Griesmar's detention length does not offend *McLaughlin*'s 48-hour period of general reasonableness, and Griesmar makes no argument that her detention was unreasonably delayed within that time.[4] Even if we were to consider the

---

[4] At summary judgment, Griesmar claimed that the delays were the result of "a subtle, systemic practice of hours of needless delay from abuse of preprinted forms without regard to constitutional law." DE 30-1, Opp. to. Mot. Summ. J., Page ID 548. However, these bald assertions cannot serve as legal support for Griesmar's claim without any factual backing. She likewise fails to argue this or any other alleged source of unreasonable delay on appeal.

substance of Griesmar's probable cause determination, it reveals no constitutional flaws. Griesmar does not claim that her probable cause determination was performed by a biased or partial magistrate nor does she indicate any legal source to suggest that the use of preprinted forms for the state's routine practice of arraignments and probable cause determinations exceeded constitutional bounds. The use of various forms and systems provides structure for courts. We do not demand that various aspects of the criminal justice system "reinvent the wheel" with each case. *See United States v. Weaver*, 99 F.3d 1372, 1381 (6th Cir. 1996) (finding that the use of boilerplate warrant affidavits to obtain warrants can be "concern[ing]" if misused but is not categorically barred). Griesmar's constitutional arguments concerning her detention fail.

With no constitutional violation established, Griesmar's Fourth Amendment claims fail. We therefore affirm the district court's grant of summary judgment to defendants on Count I.

C.

Municipalities may be found liable under 42 U.S.C. § 1983 for their unlawful acts. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Plaintiffs can prove a *Monell* claim by showing that a municipal policy or custom of inadequate training led to a constitutional harm. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). However, for any municipal liability to exist, there must be an underlying constitutional violation. *Voyticky*, 412 F.3d at 679. "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

Because we have determined that the district court did not err in granting summary judgment to the defendants on Griesmar's constitutional claims because no constitutional violation occurred, Griesmar's municipal liability claim also fails. *See Voyticky*, 412 F.3d at 679.

Accordingly, the district court properly granted summary judgment for the city on Griesmar's municipal liability claim.

IV.

For the foregoing reasons, we affirm the judgment of the district court in all respects.