The STATE of Ohio, Appellee,

v.

MILLER, Appellant.

[Cite as *State v. Miller*, 148 Ohio App.3d 103, 2002-Ohio-2389.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 79924.

Decided May 28, 2002.

William D. Mason, Cuyahoga County Prosecuting Attorney and John R. Mitchell, Assistant Prosecuting Attorney, for appellee.

James R. Willis and Myron P. Watson, for appellant.

JAMES D. SWEENEY, Presiding Judge.

{¶ 1} Defendant-appellant Richelle Miller appeals from her conviction for preparation of drugs for sale in violation of R.C. 2925.03, and possession of drugs in violation of R.C. 2925.11. The appellant was sentenced to two concurrent eight-year terms of incarceration. The appellant appeals from the trial court's denial of her motion to suppress the evidence and the trial court's denial of her motion to view a witness statement pursuant to Crim.R. 16(B).

{¶ 2} Agent Kirk Johns of the Drug Enforcement Agency ("DEA") arrested the appellant on March 6, 2000, at the Cleveland Hopkins International Airport. At the time of her arrest the appellant's luggage contained 22,066 grams of marijuana (48.5 pounds). Agent Johns testified that the Cleveland Airport's Interdiction Group, specifically Detective Harrison, received a telephone call from the Houston Airport DEA Group that two drug couriers were passing through Cleveland while traveling from California to Pittsburgh. The names of the couriers were Richelle Miller and Pamela Coffey. Detective Harrison learned from Continental Airlines that these two women were on Continental flight number 278 from Los Angeles to Cleveland and were seated in rows 19 and 24, near the tail of the airplane. This information dovetailed with the information received from the DEA in Houston.

{¶ 3} The officers did not have a description of the appellant but knew that she and her companion would be nearly the last to debark from the airplane. Agent Johns observed the appellant and Coffee as they exited the jetway of the gate. They were the last two individuals to exit the plane. The two women were observed by the officers for a short time. The appellant had two pieces of luggage, both black, one over the shoulder and one which was rolled behind her. The appellant went to the restroom leaving Coffee to supervise the luggage and, upon appellant's return, the two women proceeded down Concourse C.

{¶ 4} Near the newsstand on Concourse C, the two women stopped and conversed. Coffee stayed in place and awaited the appellant, who walked toward the newsstand. At this point, while the appellant and Coffee were voluntarily separated, Agent Johns approached the appellant and identified himself as a special agent with the DEA. He showed the appellant his badge and she agreed without hesitation to speak with him. The conversation proceeded in a normal tone of voice with no shouting or profanity. Agent Johns did not pull his gun, the discussion took place in a very public location, and he did not obstruct the appellant's ability to proceed down the concourse.

{¶ 5} The appellant stated to Agent Johns that she was traveling from Los Angeles to Pittsburgh. She permitted Agent Johns to view her airline ticket and her California identification. This information corroborated the information received from the DEA in Houston. When asked whether she was in possession of drugs or a large sum of cash, the appellant responded in the negative. Agent Johns then inquired whether he could search her luggage, and the appellant consented. Upon opening each piece of luggage, the agent found a compressed, hard block, wrapped in plastic wrap. Recognizing this as a frequent method of packaging drugs for transportation, Agent Johns placed the appellant under arrest. Subsequently, it was learned that the blocks were marijuana.

{¶ 6} On cross-examination, Agent Johns stated that he did not have the appellant sign a consent form for the search of her luggage. Agent Johns testified that he had attended a nationwide training for airport interdiction and that the issue of consent forms was never discussed. He stated that the consent forms are not used at airports, but rather are used when searching houses.

{¶ 7} Agent Johns made handwritten notes of this arrest, which were given to Detective Harrison, the officer responsible for writing the report. Although he did read the report, he did not sign it. Defense counsel then requested that the court examine the report pursuant to Crim.R. 16. The court denied the motion.

{¶ 8} Richelle Miller testified on her own behalf. She agreed with Agent Johns's version of events except that she denied giving consent for the search of her luggage. The appellant knew that the marijuana was in her luggage.

{¶ 9}   The appellant sets forth two assignments of error.

{¶ 10}   The first assignment of error:

{¶ 11}   "The court erred when it denied the defense's motion to suppress."

{¶ 12}   The appellant asserts that the trial court erred in denying the motion to suppress because she was detained by Agent Johns in the wake of an investigatory stop under circumstances where a reasonable person would not feel free to leave.   The appellant states that her actions at the airport were not suspicious and that the information received from the DEA in Houston was not sufficient upon which to effect the stop.   The appellant also argues that she was the victim of racial profiling.   Finally, the appellant asserts that absent a signed consent, the state did not meet its burden of showing, by a preponderance of the evidence, that the appellant gave consent to the search of her luggage.

{¶ 13}   There are three types of police-citizen contact in which the Fourth Amendment guarantees are implicated. *State v. Polk* (Dec. 6, 2001), Cuyahoga App. No. 79170, 2001 WL 1671155, citing *Florida v. Royer* (1983), 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229.   These situations, consensual encounter, investigatory stop, and an arrest, were discussed in *State v. Scott* (Aug. 5, 1999), Cuyahoga App. No. 74352, 1999 WL 588232.   Encounters are consensual where police merely approach a person in a public place, engage the person in conversation, and the person is free to answer or walk away. *United States v. Mendenhall* (1980), 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497.   A request to search belongings does not make the encounter nonconsensual. *Scott,* supra, citing *Florida v. Bostick* (1984), 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389. Consent given after the use of coercion, duress, or trickery is not free and voluntary. *State v. Jackson* (1996), 110 Ohio App.3d 137, 673 N.E.2d 685.   The government bears the burden of proving consent to the search by clear and positive evidence.   Id.

{¶ 14}   In *State v. Washington* (2001), 144 Ohio App.3d 482, 760 N.E.2d 866, this court held that when reviewing a warrantless search, historical fact will be reversed only upon a finding of clear error, but that a de novo determination will be made when applying those facts to the law.   Whether a search was reasonable upon particular facts is a legal question. *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Harris* (1994), 98 Ohio App.3d 543, 649 N.E.2d 7.   The state has the burden to prove the intrusion reasonable. *Washington,* supra, citing *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889.

{¶ 15}   The appellant states that her actions at the airport were not suspicious and that the information received from the DEA in Houston was not sufficient upon which to effect the stop.   As noted in *State v. Fields* (Feb. 1,

1996), Cuyahoga App. No. 68906, 1996 WL 38878, the focus of this review is not whether there was probable cause to stop and search the appellant based on the Houston DEA's information, but whether agent Johns's original contact with the appellant constituted a seizure or was consensual in nature.

{¶ 16} The appellant urges this court to find that the DEA must have a signed consent form in order for the state to meet its burden of showing by a preponderance of the evidence that a search is consensual. This court declines to reach such a conclusion. Here, the DEA agent testified that during the national training he received, no suggestion was raised that signed consent forms are appropriate for use in an airport situation. The court also heard the agent testify as to the consensual nature of the encounter. This testimony was sufficient for the trial court to reach the factual conclusion that the search was indeed consensual.

{¶ 17} The appellant testified that she did not feel free to leave when she was approached by agent Johns. We note that in *State v. Bussey*[1] (Dec. 2, 1999), Cuyahoga App. No. 75301, 1999 WL 1087494, citing *State v. Jones* (1996), 112 Ohio App.3d 206, 678 N.E.2d 285, this court held:

{¶ 18} "It is well settled that Fourth Amendment scrutiny is not triggered where a police officer approaches a person in a public place, asks to talk to him, receives permission to do so, and then poses questions to him. * * * [It is] not implicated because the person is not required to answer any of the officer's questions and is free to walk away. * * * Such encounters between the police and citizens are considered consensual encounters and do not involve any coercion or restraint of liberty. * * * Nor does an officer's request to examine a person's identification or for consent to search a person's luggage render the encounter nonconsensual, if the officer does not convey a message that compliance with his request is required. * * * A person is seized within the contemplation of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. * * *"

{¶ 19} In *Mendenhall*, supra, the United States Supreme Court determined that absent some evidence of the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled, a police officer's contact with a citizen cannot, as a matter of law, amount to a seizure of that person. Courts may consider whether a citizen's path was blocked, whether ticket or identification was retained, and whether the officer was in uniform. Id.

---

1. Application for reopening denied August 8, 2000, at 2000 WL 1146811.

{¶ 20}  In the case sub judice, the appellant corroborated Agent Johns's testimony that he did not raise his voice, did not use profane language, did not draw a weapon, and that he did not block her path.  She agreed that Agent Johns identified himself as a DEA agent and that the contact between the two was in a very public place.  Based on the testimony of the appellant, this court must agree that her interaction with Agent Johns was consensual.

{¶ 21}  Finally, we also must point out that although the issue of racial profiling was raised at the hearing, no evidence was submitted suggesting that the appellant was stopped based upon a profile of any kind.  In fact, the evidence indicated that the appellant was stopped based upon specific information received from another DEA agent in Houston and from Continental Airlines regarding the appellant's name, traveling companion, flight number, seat assignment, point of origin, and destination of travel.

{¶ 22}  The appellant's first assignment of error is overruled.

{¶ 23}  The second assignment of error:

{¶ 24}  "The court erred when it concluded that a written statement admittedly made by a prosecution witness (which related to his participation in the investigation and arrest of the appellant) was not a 'statement' that counsel for the accused was entitled to see and arguabl[y] make use of."

{¶ 25}  The appellant argues that the trial court erred in denying her access to the written statement of a witness pursuant to Crim.R. 16.

{¶ 26}  Crim.R. 16(B)(1)(g) governs the disclosure of witness statements and provides in its entirety as follows:

{¶ 27}  "(g) *In camera inspection of witness' statement.*  Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

{¶ 28}  "If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

{¶ 29}  "If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

{¶ 30}  "Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

{¶ 31}  It has been held that a preliminary hearing has but one purpose, to determine whether there is probable cause to believe a crime has been committed by the accused.  *State v. Ball* (1991), 72 Ohio App.3d 549, 595 N.E.2d 502.  The burden of proof and the Rules of Evidence that apply to a trial are different at this proceeding.  Id.  Therefore, the requirements of Crim.R. 16 do not apply to preliminary hearings.

{¶ 32}  In *State v. Robinson* (Dec. 22, 1994), Cuyahoga App. No. 66316, 1994 WL 716559, this court rejected the proposition that Crim.R. 16(B)(1)(g) mandates disclosure of witness statements in pretrial suppression hearings.  This rejection was based upon the plain language of the rule that unambiguously limits the scope of this provision to the completion of witness direct examination testimony at "trial."  *Robinson,* supra, citing *State v. Moreland* (Nov. 5, 1981), Cuyahoga App. No. 43369, 1981 WL 4603.

{57 33}  In the matter at hand, the appellant requested the DEA report because Agent Johns gave the writer of the report his handwritten notes and Agent Johns did not disapprove of the final report.  This court has held that defendants are not entitled to the benefits of Crim.R. 16(B)(1)(g) until an issue arises at trial.

{¶ 34}  The appellants second assignment of error is overruled.

Judgment affirmed.

MICHAEL J. CORRIGAN and KARPINSKI, JJ., concur.