NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0660n.06
Filed: November 3, 2008

No. 07-4539

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TABATHA C. MANLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | On Appeal from the United |
| | ) | States District Court for the |
| PARAMOUNT'S KINGS ISLAND, et al., | ) | Southern District of Ohio |
| | ) | |
| Defendant-Appellees. | ) | |

Before:       BOGGS, Chief Judge; and GIBBONS and GRIFFIN, Circuit Judges.

PER CURIAM. Tabatha Manley appeals the dismissal of her § 1983 lawsuit against Paramount's Kings Island (PKI) and several of its employees. She argues that PKI violated her constitutional rights when one of its security guards detained her briefly and later filed a criminal complaint against her in connection with the theft of another patron's purse. The sole issue before us is whether the district court erred in granting PKI's motion for summary judgment on Manley's Fourth Amendment claims.[1] We conclude that a reasonable jury could not find that Manley's Fourth Amendment rights were violated and therefore affirm the district court's dismissal.

I

---

[1] Although PKI disputed the district court's finding that its security guards were state actors and both parties briefed this issue on appeal, PKI conceded this point during oral argument.

On October 16, 2004, Leighann Goins visited PKI with a number of friends. Before taking their seats on a roller coaster, they deposited their personal belongings in the cubicles provided by PKI. On the same evening, Manley was also visiting PKI. Accompanied by her husband, children, and several other relatives, she went on the same ride, and she stored a number of items in a neighboring cubicle. After leaving the ride, Manley retrieved her possessions and headed to a nearby restroom. Meanwhile, Goins discovered that her purse was missing. A friend of Goins recalled a similar experience in which stolen personal property was later recovered in the bathroom, so together they headed to the ladies room. Once there, they called Goins's cell phone, which had a "distinctive ring tone," hoping to locate the purse and its contents. Amazingly, a phone began to ring from one of the stalls, and two young children also in the bathroom started "looking nervously." Goins zeroed in on her ring tone and Manley eventually emerged from that particular stall. A friend noticed that there was a square bulge in Manley's sweatshirt, as if she were concealing something.

Goins and her friend followed Manley and say they saw her go behind a kiosk with a child. Although their view was obstructed, Goins checked the area after they left and found her purse, which was empty. She then decided to confront Manley: when Goins asked Manley to return her phone and other possessions, Manley denied knowing anything about Goins's belongings and immediately proceeded with her family toward the exit. By this time, Goins's friend had enlisted a PKI security guard to investigate. When the officer shined his flashlight in Manley's direction, she and her family immediately fled through the parking lot. When the guard finally caught up with Manley and asked about the theft, Manley again professed her innocence. Meanwhile, several other PKI security officers arrived. They questioned her as well, and Manley admits during this questioning she was never touched, searched, or arrested. She left freely and of her own accord.

- 2 -

PKI continued to investigate the matter and obtained written statements from both Goins and her friend detailing what was taken and recounting the earlier events. More importantly, PKI secured video footage from the security camera focused on the cubicles where Goins deposited her purse as she rode the roller coaster. The surveillance video showed Manley pointing to the purse and a juvenile believed to be her daughter taking the purse and leaving with Manley. The statements from Goins and her friend, its own security personnel's observations, and the video footage in hand, PKI filed a complaint with the local prosecutor, who in turn obtained a warrant for Manley's arrest. Although no new evidence emerged between the arrest and a preliminary hearing, an Ohio Municipal Court dismissed all charges against Manley. The court's three-sentence entry of judgment states only that "[b]ased on the evidence and testimony presented the court did not find that the crime described in the complaint had been committed nor did the court find that the above named defendant committed it." JA 216. Manley in turn filed this suit against PKI alleging violation of her constitutional rights and seeking monetary damages under § 1983.

II

Manley alleges that PKI violated her constitutional right against unlawful seizure and that the district court erred in granting summary judgment to the defendants. Her Fourth Amendment claims turn on two separate determinations by the district court, which she appeals: (1) PKI's officer had reasonable suspicion to stop her in the parking lot in the course of investigating the theft and (2) PKI had probable cause to believe she committed the crime when its security guards filed the criminal complaint that led to her arrest and arraignment. To survive a summary judgment motion, the plaintiff must present affirmative evidence sufficient to support a jury verdict in her favor. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted). The district court found that Manley had not met this minimal burden.

We review grants of summary judgment de novo under the standard set forth in Federal Rule of Civil Procedure 56 and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). *See Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 301 (6th Cir. 2005). Generally, questions about whether the police had a reasonable suspicion or probable cause are presented to a jury in a § 1983 case, but they may be determined by the court if "there is only one reasonable determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)). Thus, we should affirm the district court's dismissal if a reasonable jury could not find that the officers violated the Fourth Amendment. *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008). Viewing the facts as stated above, we must evaluate PKI's basis for stopping Manley in the parking lot and later filing a criminal complaint against her.

A.    The Initial Stop

Even though PKI personnel never touched Manley, a seizure may nevertheless have taken place. PKI does not dispute that Manley was detained in the parking lot, perhaps because this court must examine the facts in a light most favorable to the non-moving party. A seizure occurs when a person yields to an officer's show of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005). Even if the shining of the flashlight did not constitute a "show of authority," chasing Manley through the parking lot arguably did. And Manley acquiesced in stopping in the course of the guard's pursuit to answer questions.

The police may conduct a limited investigatory detention of someone, falling short of arrest, if they reasonably suspect a person committed a crime. *Terry v. Ohio*, 392 U.S. 1 (1968). A *Terry*

stop "is permissible when it is based upon specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion that the individual is, was, or is about to be engaged in criminal activity." *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir. 2000). *Terry* stops are ultimately judged for objective reasonableness under a totality of the circumstances test. *United States v. Wilson*, 506 F.3d 488, 492 (6th Cir. 2007).

PKI had several reasons to suspect Manley. First, there were first-hand accounts given by Goins and Flick. This case does not involve anonymous tipsters whose statements require additional corroboration to establish probable cause, *see Illinois v. Gates*, 462 U.S. 213, 245–46 (1983), but customers whose identities were known and who offered clear and consistent reports about why they suspected Manley had stolen the property. Because police would be crippled if they could not make brief investigatory stops based on statements from citizens, we have previously held that a property owner's complaint of theft, in conjunction with an identification of the suspected thief, creates reasonable suspicion. *Gardenhire v. Schubert*, 205 F.3d 303, 317 n.5 (6th Cir. 2000). Although Goins and Flick did not claim to have personally witnessed Manley or her daughter taking the purse, their statements about the cell phone ringing from the bathroom stall that Manley occupied and Manley's leaving the lavatory with an object apparently concealed in her clothing both suggest she was in possession of the stolen property.

PKI's security guards also had a second basis for suspecting Manley: she ran when they approached her. JA 45. Although the Supreme Court has stopped short of finding that fleeing the police alone necessarily gives rise to a reasonable suspicion, it has held that "[h]eadlong flight" is "certainly suggestive" of criminal conduct. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Coupled with other facts—in this case, the statements of two other patrons—evasive conduct indisputably

justifies a brief detention. Manley's flight was "not a mere refusal to cooperate," and it is understandable that PKI would want to investigate such a person's possible involvement. *Id.* at 125.

Manley contends that even if the security guard who stopped her had a reasonable suspicion, the detention exceeded the scope of a *Terry* stop. That an officer has a reasonable suspicion and did not place Manley under arrest does not definitively show that the seizure was reasonable under the Fourth Amendment. *Terry*, 392 U.S. at 27. *Terry* permits only a brief seizure, and holding a person for a protracted period of time or conducting a search of her person (beyond a mere frisk) requires probable cause even if the suspect is never formally placed under arrest. *Id.* at 33. Since Manley does not contend the security guard touched her, the issue she raises is a question only of how long she was detained.

There is no per se rule as to how long a stop may last without exceeding the limits of *Terry*, *United States v. Sharpe*, 470 U.S. 675, 686 (1985), but a twenty-minute detention is reasonable when the police act diligently to investigate the allegations and the detention does not involve unnecessary delay. *Id.* at 687. Here, the officer says that the stop took "a few moments." JA 42. One of the patrons who implicated Manley in the crime said it lasted only "a few minutes." JA 38. Manley's only evidence that she was held for a longer period of time is that the encounter began around 10:30 p.m. and yet the incident report was drafted at midnight. Br. of Appellant 22 (citing JA 45). Manley therefore contends the detention "could" have lasted an hour and a half. *Ibid.* The district court correctly rejected this view because the fact that the officer did not complete the report until midnight does not provide any basis for concluding that Manley was held for an hour and a half. JA 271. Furthermore, Manley's mere suggestion that she could have been held for that long a period is not the same as asserting she in fact was held for that amount of time. Although in reviewing a

- 6 -

grant of summary judgment, we must consider the evidence in a light most favorable to the non-moving party, we need not overlook evidence against Manley or assume the existence of facts not even asserted by her.  Therefore, even viewing the evidence in a light most favorable to Manley, no reasonable jury could find the stop, whether a few moments or a few minutes, unreasonable under the Fourth Amendment.

B.      The Criminal Complaint And Manley's Subsequent Arrest

In filing a criminal complaint with the prosecutor, PKI's guards did not actually arrest Manley.  To the contrary, Manley was ultimately arrested by police officers pursuant to a valid arrest warrant obtained by the prosecutor.  Although PKI does not argue the point, the intervening decisions by the prosecutor to press charges and by the magistrate to issue a warrant raise the question of whether PKI is liable for Manley's subsequent arrest, even if it was not supported by probable cause.  Neither party raises the issue, however, and it is unnecessary for us to resolve this question since we ultimately find that probable cause existed as a matter of law.

Probable cause is a "practical, nontechnical conception" that deals with probabilities, not certainties and the "factual and practical considerations of everyday life."  *Gates*, 462 U.S. at 230–31.  Police have probable cause to arrest a person when they have "reasonably trustworthy information that is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense based on the facts and circumstances within the police's knowledge at the moment in question."  *Peet v. City of Detroit*, 502 F.3d 557, 563–64 (6th Cir. 2007) (quotations omitted).  While the police may not ignore known exculpatory evidence in judging probable cause, they are "under no obligation to give any credence to a suspect's story" and need not

halt the investigation just because the suspect gives "a plausible explanation" for her conduct. *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988).

In this case, the evidence provides probable cause as a matter of law: the statements by the victim and her friend implicating Manley in the theft; Manley's flight in the course of PKI's investigation of the theft; and finally, the security video showing Manley pointing to the purse and a juvenile believed to be her daughter taking the purse and leaving with Manley. Before specifically addressing each of these elements, it is important to underscore how the case at bar differs from a "she-said/she-said" case in which officers may not have probable cause. This court has previously found that an officer cannot arrest a person pursuant to the "bare allegation" of one party. *Parsons v. City of Pontiac*, 533 F.3d 492, 500–01 (6th Cir. 2008). At the very least, a court must refrain from finding as a matter of law that probable cause exists when the arresting officer has not undertaken any investigation or collected any evidence to corroborate the report of a single person. *Rothhaupt v. Maiden*, 144 F. App'x 465, 469–70 (6th Cir. 2005).

Despite Manley's effort to portray this case as very similar to *Rothhaupt*, the facts can be distinguished on several grounds. First, rather than a single bare allegation, there are detailed accounts from two people. This court has previously found statements by two separate individuals can be sufficient to establish probable cause. *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 637-38 (6th Cir. 2004) (relying primarily on statements from two students to find probable cause to detain other students suspected of plotting a school shooting). In this case, the two witnesses are particularly credible, because their oral and written accounts are detailed and remained consistent over time and corroborated one another. *See* JA 37–40, 48–49; *Williams*, 370 F.3d at 637 (noting that the "three girls all conveyed the same essential information to [the police], and their written

statements matched their oral statements"). Although such reports may on their own support probable cause, there is still other undisputed evidence before the court, such as the fact Manley ran when confronted by a PKI officer investigating the theft. *Wardlow*, 528 U.S. at 124.

The most critical evidence, however, is the security video PKI obtained after briefly questioning Manley in the parking lot and letting her leave. Before filing a criminal complaint, a PKI officer watched video footage that showed Manley pointing toward the purse and showed a "juvenile" in her party, believed to be Manley's daughter, picking up the purse and leaving with Manley. JA 42, 50. The officer's own observation of the tape strongly supports the finding of probable cause, and the tape further corroborated the account of the victim's friend, who described seeing "nervous" children in the bathroom when the cell phone began to ring. Manley emphasizes that the video does not show *her* taking the purse, but this does not alter our analysis both because of the other evidence in the case and because Manley does not dispute the fact that the purse was stolen by a "juvenile" who then left with her. Looking at the record in the light most favorable to Manley does not bar this court from considering evidence suggestive of her guilt, and the video provides weighty support for finding probable cause.

The district court's finding that probable cause was present—indeed, that a reasonable jury could not conclude to the contrary—is complicated by the state court's dismissal of the complaint against Manley. Manley contends that the district court was estopped from finding probable cause, because a state court dismissed the complaint against her. In the alternative, the state court's decision could be read as highly persuasive evidence that a reasonable jury could find probable cause lacking, and therefore that summary judgment was not appropriate. The state court's dismissal is curious in light of the significant evidence against Manley, and the Ohio court's terse opinion does

not explain either the reasons for its decision or the standard under which the decision was reached. JA 216. However, under Ohio law, the standard for a preliminary hearing is "probable cause." If the judge finds probable cause to believe that the defendant committed a crime, the defendant is bound over to the Ohio Court of Common Pleas for trial; if the judge does not find probable cause, the defendant is released. Ohio R. Crim. P. 5(B)(4); *see also State v. Miller*, 772 N.E.2d 175, 180 (Ohio App. 2002) ("[A] preliminary hearing has but one purpose, to determine whether there is probable cause to believe a crime has been committed by the accused.").

Judges can and do disagree over whether evidence compels the conclusion that the defendants in a § 1983 case had probable cause. Moreover, the law is clear: an arrest grounded in probable cause does not become invalid simply because the charges are later dropped or the defendant is acquitted. *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004). Since res judicata would have barred Manley's § 1983 suit had the state judge found probable cause existed, *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987), some plaintiffs in § 1983 cases will assume a double standard is being applied. However, this rule makes sense since an arrest may be grounded on probable cause even if charges are later dropped or the defendant is acquitted. *Williams v. Cambridge Bd. of Educ.*, 370 F.3d 630, 638 (6th Cir. 2004).

Our court has independently evaluated the existence of probable cause in at least two § 1983 cases where the plaintiff brought Fourth Amendment claims after a state court dismissed the charges at a preliminary hearing. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 673–74 (6th Cir. 2005); *Jacobs v. Village of Ottawa Hills*, 5 F. App'x 390, 391, 394 (6th Cir. 2001) (affirming the district court's denial of qualified immunity for an officer who did not have sufficient justification for a

*Terry* seizure). In *Voyticky*, a police officer was accused of mishandling city funds. An Ohio magistrate judge found probable cause to issue an arrest warrant, but after the arrest was made, another Ohio judge dismissed the charges for lack of probable cause. The officer sued the city for violating his Fourth Amendment rights. We affirmed a grant of summary judgment to the city, holding that the arrest was supported by probable cause, and that an arrest supported by a facially valid warrant is a complete defense to the plaintiff's claims under both federal law and Ohio law. *Id.* at 675–76. Both in *Voyticky* and the case at bar, the defendant was arrested pursuant to a valid warrant, but the charges were dismissed for lack of probable cause. The panel did not discuss the relevance of the state court's dismissal, but in granting summary judgment, *Voyticky* held that a state court's dismissal does not bind a federal court in a later § 1983 action.

Other federal courts have reached the same conclusion as the Sixth Circuit: even when a state court dismissed a charge for lack of probable cause to prosecute, a federal court in a subsequent § 1983 action for Fourth Amendment violations should not entertain a § 1983 suit if it finds no genuine issue of material fact as to probable cause to arrest. *Rodriguez-Mateo v. Fuentes-Agostini*, 66 F. App'x 212, 213 (1st Cir. 2003); *Cameron v. Payne*, No. 93-6528, 1994 WL 144260, at *3 (4th Cir. Apr. 25, 1994) (concluding that despite the state court's dismissal for lack of probable cause, Officer Payne was entitled to qualified immunity because he could have reasonably believed probable cause existed); *Williams v. Kobel*, 789 F.2d 463, 468-69 (7th Cir. 1986) (noting the question of probable cause to arrest and probable cause to bind over for trial at a preliminary hearing are distinct); *Shea v. Muensterman*, 2 F. App'x 528, 529 (7th Cir. 2001) (affirming the dismissal of a § 1983 suit because probable cause for plaintiff's arrest "clearly existed" despite the state judge's

contrary finding and dismissal of charges). Therefore, despite the state court's dismissal of the charges against Manley, the district court's grant of summary judgment was correct.

III

Reviewing the evidence in a light most favorable to plaintiff, PKI security guards had a reasonable suspicion of Manley when detaining her in the parking lot and probable cause when PKI filed a criminal complaint leading to her arrest. The judgment of the district court is AFFIRMED.