NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0376n.06

Case No. 15-6145

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WALTER EARL DODD, JR., | ) | **FILED** |
| | ) | Jul 06, 2016 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| JERRY SIMMONS, | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| Defendant, | ) | TENNESSEE |
| | ) | |
| and | ) | |
| | ) | |
| CHARLES PIERCE, Officer, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GUY, BATCHELDER, and COOK, Circuit Judges.

COOK, Circuit Judge. The Simmons family and the Dodd family dislike each other. But their low-profile feud escalated into a criminal case when members of the Simmons family falsely told City of Centerville Police Officer Charles Pierce that Earl Dodd brought a gun to an otherwise non-violent confrontation. Officer Pierce arrested Earl for aggravated assault, but the charges were dropped when the Simmonses' deception surfaced. Earl sued Officer Pierce for false arrest under 42 U.S.C. § 1983, and a jury awarded Earl $75,000 in compensatory damages.

Officer Pierce appeals, and we REVERSE the judgment of the district court denying his qualified-immunity defense.

**I.**

Johnathan Merle Dodd and Jennifer Racheal Simmons had a child together, and custody disputes plagued their families' relationship thereafter. After a Saturday visitation with his child, Merle drove to the Centerville McDonald's, where Racheal and other members of the Simmons family were eating. To avoid the Simmonses, Merle pulled into a parking spot to eat. The Simmons family noticed him, and a heated argument ensued. Someone called the police, and Merle called his father Earl. Before he arrived, Earl placed his handgun, which he customarily wears on his side in a holster, in his car's center console. Earl joined the fracas, grabbing his own crotch and telling the Simmonses to "get away from me."

Two Centerville police officers, Shane Witherspoon and Danny Roberts, arrived at the scene and interviewed Earl and the Simmonses. Deeming the incident a family dispute, the officers made no arrests, charged no one with a crime, recommended no further investigation, and wrote no reports.

A few days later, Racheal petitioned for an order of protection against Earl, claiming that he threatened her and her family at McDonald's and "had a gun on his side with his hand on his gun [the] whole time this was going on." When the circuit-court clerk granted the petition, Racheal and her family took the order of protection to the local jail to obtain an arrest warrant for Earl. Jerry Simmons, Racheal's father, was the only police officer on duty there, and he called Officer Pierce to the jail to speak to his family. Officer Pierce then asked two members of the Simmons family—Pam Simmons and Cory Chandler—to write statements describing the

McDonald's fight. Their statements agreed: with one hand on his holstered gun and the other on his crotch, Earl threatened to "take care" of Cory. Officer Pierce also talked to Officers Roberts and Witherspoon about what they observed at McDonald's days earlier. Both opined that "nothing happened"—no crime occurred. Officer Pierce asked Officer Roberts to write a statement,[1] and Officer Roberts complied, noting that the Simmonses "did state that Mr. Dodd did not threaten them with [his] gun but did have his hand resting on this weapon during the exchange of words."

Officer Pierce took the Simmonses' statements to Assistant District Attorney Kate Yeager and also informed her that Officer Roberts "didn't see that really a crime had been committed." Yeager advised Officer Pierce to seek an aggravated-assault warrant, and he heeded the advice. In the warrant affidavit, he summarized the Simmonses' statements—that Earl threatened to "take care" of Cory while he "had his hand on a pistol in the holster." Officer Pierce omitted the opinions of Officers Roberts and Witherspoon, as well as Officer Roberts's statement that Earl "did not threaten [the Simmonses] with his gun." The magistrate issued the warrant.

Soon thereafter, Earl was arrested. Earl's wife filed a complaint about Earl's arrest with the Centerville mayor, who recommended an investigation. Pam and Cory eventually admitted that they never saw a gun at McDonald's, and the state dropped the aggravated-assault charge against Earl.

Earl sued Officer Pierce for false arrest, Officer Simmons and Officer Pierce for conspiring to violate his constitutional rights, and the City of Centerville for failure to train its

---

[1] The parties' briefs expend tremendous energy on this report. Earl notes that no *official* report existed until after his arrest. Pierce explains that Officer Roberts made an official police report post-arrest by sticking a cover sheet on his unofficial statement. We find nothing significant in these events.

police officers.[2]  At trial, the district court granted the City's motion for judgment as a matter of

law.  The jury found in favor of Officer Simmons and Officer Pierce on the conspiracy claim, but

found Officer Pierce liable on the false-arrest claim, awarding Earl $75,000.  The court denied

Officer Pierce's motions for judgment as a matter of law and a new trial.  Officer Pierce appeals.

## II.

Finding Officer Pierce's qualified-immunity argument dispositive, we address only that

portion of his appeal.

### A.  Forfeiture

At the outset, Earl argues that Officer Pierce forfeited his qualified-immunity defense by

failing to raise it in his Rule 50(a) motion for judgment as a matter of law.  A defendant who

fails to move for judgment as a matter of law under Rule 50(a) on the basis of qualified

immunity may not move for judgment as a matter of law under Rule 50(b) on that basis.  *Sykes v.

Anderson*, 625 F.3d 294, 304 (6th Cir. 2010).  The defendant's Rule 50(a) motion must put the

plaintiff and the court on notice of the defense, either by referencing qualified immunity or terms

associated with it, such as "clearly established law" or "objectively unreasonable actions."  *Id.*

The district court rejected Earl's forfeiture argument.  Conceding that Officer Pierce's

Rule 50(a) motion lacked the magic words "qualified immunity," the court found that Officer

Pierce nonetheless preserved the defense.  Specifically, Officer Pierce argued:

> In addition to that, I think it's also well established that you don't have to look
> under every rock or turn over every stone in terms of potential probable cause.
> The record is replete with references that at the time Officer Pierce had this
> information, it was reasonable for him to assume that what he had before him
> constituted probable cause, based upon not one, but two sworn statements.

---

[2] The district court denied the defendants' motions for summary judgment based on
qualified immunity, finding genuine disputes of material fact.  We dismissed the defendants'
interlocutory appeal. *Dodd v. Simmons*, No. 13-6505, slip op. at 3 (6th Cir. May 7, 2014).

In other words, Officer Pierce argued that his actions were reasonable based on "well established" law on probable cause, invoking qualified immunity.

On appeal, Earl reasserts his forfeiture argument, noting again that Officer Pierce's Rule 50(a) argument neglected the words "qualified immunity" and failed to cite any qualified-immunity cases. But the district court disregarded Officer Pierce's failure to say "qualified immunity," and Earl fails to grapple with the court's conclusion. Earl's observation that Officer Pierce cited no qualified-immunity cases leaves us unmoved. Officer Pierce's oral motion sufficed to put Earl and the court on notice of the defense, and Rule 50(b) requires no more. *See Sykes*, 625 F.3d at 304.

## B. Standard of Review

We review de novo the denial of Officer Pierce's renewed motion for judgment as a matter of law. *Id.* at 305 (citing *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007)). Employing the same deferential standard as the district court, we "view[] the evidence in the light most favorable" to Earl and must not "reweigh the evidence or assess the credibility of the witnesses." *Id.* (quoting *Radvansky*, 496 F.3d at 614). After trial, the question is whether the evidence favoring Earl is legally sufficient to overcome qualified immunity. *See Ortiz v. Jordan*, 562 U.S. 180, 184 (2011); see also *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004). First, "[i]n determining whether a Fourth Amendment violation occurred, we draw all reasonable factual inferences in favor of the jury verdict, but . . . we do not defer to the jury's legal conclusion that those facts violate the Constitution." *Muehler v. Mena*, 544 U.S. 93, 98 n.1 (2005) (citation omitted). Second, we assess whether the constitutional right was clearly established at the time of the incident, *Iswed v. Caruso*, 573 F. App'x 485, 488 (6th Cir. 2014) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)), such that "a reasonable

official would understand that what he is doing violates" the right, *id.* (quoting *Andrews v. Hickman Cty.*, 700 F.3d 845, 853 (6th Cir. 2012)).

## C. Officer Pierce's Entitlement to Qualified Immunity

Earl accused Officer Pierce of violating his constitutional right to be free from an unlawful arrest. At trial, he therefore had to show that Officer Pierce lacked probable cause to arrest him for aggravated assault at the time he requested the warrant. *Sykes*, 625 F.3d at 305. Tennessee aggravated assault occurs when a person "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury," Tenn. Code Ann. § 39-13-101(a)(2), and the offense "[i]nvolve[s] the use or display of a deadly weapon," *id*. § 39-13-102(a)(1)(iii).

Because arrests based on facially valid warrants approved by a magistrate judge supply a complete defense, Earl had to prove that "in order to procure the warrant," Officer Pierce "'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood' and 'such statements or omissions [we]re material, or necessary to the finding of probable cause.'" *Sykes*, 625 F.3d at 305 (alterations in original) (quoting *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000)). Unearthing falsities or omissions in an otherwise-valid warrant will not suffice—a constitutional violation occurs only when a truthful and complete affidavit lacks probable cause. *Id*. Officer Pierce's liability therefore hinges on the strength of Earl's argument that the information omitted would have altered the probable-cause calculus if included.

In hindsight, we know that Earl's holster was empty. But Earl offered no proof at trial that Officer Pierce knowingly omitted that information from the warrant affidavit. Pam and Cory both assured Officer Pierce that Earl's gun was in his holster. Officer Roberts's statement, too, contributed to Officer Pierce's believing that Earl's holster contained a gun:

> [The Simmonses] did state to me that they had had a verbal exchange with Mr. Earl Dodd also and that his gun was on his side during this, before our arrival. They did state that Mr. Dodd did not threaten them with this gun but did have his hand resting on this weapon during the exchange of words.

And neither Officer Roberts nor Witherspoon testified to informing Officer Pierce that Earl's holster was empty prior to their arrival. Indeed, Earl never argues in his brief that Officer Pierce knew of the empty holster—he merely presses the ease with which Officer Pierce could have discovered this information.

Setting the empty holster aside, Officer Pierce omitted only the following information from his affidavit: (1) Officer Roberts's statement and (2) Officer Roberts's and Officer Witherspoon's opinions that no crime had occurred. Had this information been included in the affidavit, there still would have been probable cause to believe Earl had committed aggravated assault. *See Sykes*, 625 F.3d at 305 (instructing courts to determine whether including the omitted information still supports probable cause). Officer Roberts's omitted statement repeatedly noted that Earl's holster contained a gun, giving Officer Pierce probable cause to believe that Earl's conduct "[i]nvolved the use or display of a weapon." Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). The statement also provided probable cause to believe that Earl *knowingly* caused the Simmonses "to reasonably fear imminent bodily injury." *Id.* § 39-13-101(a)(2). Finally, Officer Roberts stated that Racheal claimed "she was afraid of" Earl, prompting Officer Roberts to urge her to seek an order of protection against him. This establishes probable cause to believe that the Simmonses "fear[ed] imminent bodily injury." *Id.* (Trial Ex. 20, R. 48-8, ID 759.) In short, Officer Roberts's statement set forth each element of aggravated assault and *supported* Officer Pierce's belief in probable cause. And Officer Roberts's and Witherspoon's opinions did not provide information that negated any element of the offense, leaving the probable-cause calculus unchanged.

Officer Pierce had ample information—the statements of Pam, Cory, and Officer Roberts—supporting the notion that Earl carried his gun during his confrontation with the Simmonses. The omissions that Dodd argues to be meaningful fail to counter that key fact. Probable cause supported Officer Pierce's arrest of Earl, and a proper analysis of the trial testimony ought to have led the district court to grant him qualified immunity.

The district court's analysis strayed when it mislabeled the relevant constitutional violation:

> Plaintiff has a Fourth Amendment right to be free from arrest based upon the omission of material information from the arrest warrant application. *See Sykes*, 625 F.3d at 305 (collecting cases). Thus, Pierce owed Plaintiff a clearly established legal duty to make a reasonable inquiry for inculpatory and exculpatory evidence.

(Framing Officer Pierce's constitutional duty as an affirmative duty to investigate led the court to conclude that Officer Pierce's talking to Pam and Cory, but not Earl, was objectively unreasonable conduct.

But Earl enjoys no right, clearly established or otherwise, to "a reasonable inquiry for inculpatory and exculpatory evidence." In fact, our cases hold just the opposite—a police officer has no duty to search for exculpatory facts if the facts within the officer's knowledge establish probable cause. *See, e.g.*, *Stahl v. Czernik*, 496 F. App'x 621, 625–26 (6th Cir. 2012) (holding that there is "no continuing duty to investigate" once the officer establishes probable cause); *Manley v. Paramount's Kings Island*, 299 F. App'x 524, 528–29 (6th Cir. 2008) ("While the police may not ignore known exculpatory evidence in judging probable cause, they are 'under no obligation to give any credence to a suspect's story' and need not halt the investigation just because the suspect gives a 'plausible explanation' for her conduct." (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988))); *United States v. Harness*, 453 F.3d 752, 755 (6th Cir.

2006) (finding that a police officer need not speak to the suspect before arresting him because "once a police officer has sufficient probable cause to arrest, he need not investigate further" (quoting *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001))). The court should not have considered Officer Pierce's failure to interview Earl in its qualified-immunity analysis.

## III.

We REVERSE the district court's denial of Officer Pierce's Rule 50(b) motion based on qualified immunity and REMAND with instructions to grant that motion.