[Cite as *State v. Young*, 2018-Ohio-164.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 105444

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CLINTON M. YOUNG, III

DEFENDANT-APPELLANT

---

## JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-609189-A

**BEFORE:** Stewart, P.J., Boyle, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** January 18, 2018

**ATTORNEY FOR APPELLANT**

Allison S. Breneman
1220 West 6th Street, Suite 303
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Kelly N. Mason
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1} Defendant-appellant Clinton M. Young, III appeals the trial court's denial of his motion to suppress a firearm and several baggies of marijuana and pills police discovered after placing him under arrest. Upon review, we overrule his sole assigned error and affirm.

{¶2} The record developed at the suppression hearing reveals that one evening, a Parma Heights resident called 911 to report two males breaking glass in an intersection. The caller stated that the suspects were heading south on Edgehill Drive towards the intersection where Edgehill merges into Pearl Road, and that one of them was on a bicycle. Two police officers, in separate patrol cars, responded to the scene.

{¶3} The officers arrived to the vicinity within minutes of being dispatched. The first officer came upon Young, who was riding a bicycle on the sidewalk, heading south on Pearl Road near Edgehill Drive. He relayed this information to the second officer and continued to search for additional suspects. The second officer saw Young on his bicycle, immediately turned his cruiser around, and activated his lights. Young stopped. The other officer arrived shortly thereafter and they questioned Young about what he was doing and if he knew about the broken glass. They asked Young if they could see his identification and Young complied. The officers ran Young's information through dispatch and were alerted to the fact that Young had an active warrant. After arresting Young, police discovered the firearm and contraband. Young moved to suppress the

items arguing that the police did not have a right to stop him. The trial court denied his motion.

{¶4} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Because the trial court is in the best position to resolve issues of fact, we defer to its findings, so long as they are supported by competent, credible evidence. *Id.* Accepting those facts as true, and without deference to the trial court, we independently determine whether those facts satisfy the applicable legal standard. *Id.*

{¶5} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures as per se unreasonable, subject to a few exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Any evidence obtained in violation of the Fourth Amendment may not then be used by the state against an accused at trial. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). An investigatory stop is considered a "seizure" within the context of the Fourth Amendment when a person is detained, to the extent that a reasonable person would not feel free to leave. *State v. Raine*, 8th Dist. Cuyahoga No. 90681, 2008-Ohio-5993, ¶ 18, citing *United States v. Montgomery*, 377 F.3d 582, 587-588 (6th Cir.2004).

{¶6} An investigative or "*Terry*" stop, where an officer briefly detains a person based on a reasonable suspicion that the person may be involved in criminal activity, is one exception to the general prohibition to warrantless searches and seizures. *See Terry*

*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such stops, when predicated on reasonable suspicion and conducted for investigative purposes, do not run afoul of the Constitution. *Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004). Reasonable suspicion may be based on information that is less reliable than what is required to establish probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). However, it requires "at least a minimal level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 121, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

{¶7} A *Terry* stop is valid where the officer's reasonable suspicion is based on specific and articulable facts that the individual in question is, was, or soon will be engaged in criminal activity. *State v. Arafat*, 8th Dist. Cuyahoga No. 102662, 2016-Ohio-385, ¶ 20. During the stop, police "may ask the detainee a moderate number of questions to determine his identity * * *." *Berkemer v. McCarty*, 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The detainee, however, is under no obligation to respond. *Id.* And if the detainee's answers do not give the officer probable cause to arrest him, then the police must release him. *Id.* at 439-440.

{¶8} Consensual encounters with the police are not subject to Fourth Amendment protections. *State v. White*, 8th Dist. Cuyahoga No. 92229, 2009-Ohio-5557, ¶ 9. During a consensual encounter, police officers need not articulate any reasonable suspicion. *Id.* They may engage in conversation, ask questions, and check identification. *Id.* "'A person is seized within the contemplation of the Fourth

Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Miller*, 148 Ohio App.3d 103, 2002-Ohio-2389, 772 N.E.2d 175, ¶ 18 (8th Dist.), quoting *State v. Bussey*, 8th Dist. Cuyahoga No. 75301, 1999 Ohio App. LEXIS 5707, 4 (Dec. 2, 1999). Where a person does not attempt to leave, a seizure may still be implicated by the presence of multiple officers, drawn weapons, physical touching, or language and tone indicating that compliance is required. *See United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶9} Young argues that the officers' request for his identification was unnecessary to their investigation of the broken glass and was only done as a means of checking for warrants. He argues that he could not, and did not, voluntarily provide his identification to the police because at the point the officers asked him for it, he was not free to leave and had no choice but to comply with their request.

{¶10} When the police encountered Young, one immediately turned around, activated his lights, and approached him. That officer did not remember exactly what he said to engage Young, but testified that his tone was not angry or loud, that he did not yell at Young, nor did he order him to stop his bicycle. The officer testified to saying something to the effect of "hey, can I talk to you?" The other officer arrived within a short time, at which point the officers asked Young where he was coming from, where he was going, what he was doing, and why he was in the area. They asked him if he knew anything about the broken-glass incident. Neither officer drew a weapon or physically

touched Young.  One officer described the manner in which he addressed Young as being a "normal conversational tone."

{¶11} With regard to whether a reasonable person would have felt free to leave at this point, both of the officers' testimony, as well as Young's were clear that Young was not free to leave.  *But see Whren v. United States*, 517 U.S. 806, 810-813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (subjective motivations of police are irrelevant in probable cause analysis).  Young argues, therefore, that the encounter was an investigatory stop and not a consensual encounter.  Even assuming that to be true, the police had reasonable suspicion to believe that Young was involved in the glass-breaking incident.  The 911 call indicated that one of the suspects was a male on a bicycle heading in the same direction as Young was heading.  Admittedly this description is generic, but Young fit it.  This, combined with testimony from one of the officers that there was nobody else outside at that time of night, compels us to find that the stop was lawful.

{¶12} "'Ordinarily, an investigating officer is free to ask a person for identification without implicating the [Fourth] Amendment.'"  *Hiibel,* 542 U.S. at syllabus, 124 S.Ct. 2451, 159 L.Ed.2d 292, quoting *INS v. Delgado*, 466 U.S. 210, 216, 80 L.Ed.2d 247, 104 S.Ct. 1758 (1984).  Courts have recognized that police may ask a suspect for identification during an investigatory stop to check for warrants.  *See, e.g., State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 23 (2d Dist.) (citing cases); *State v. Smith,* 10th Dist. Franklin No. 04AP-859, 2005-Ohio-2560, ¶ 38 (request for identification immediately related to investigatory stop).

**{¶13}** The officers testified that they asked Young for his identification. They did not demand it or order that he show it. Young complied with the request. He could have refused. And if his refusal and answers to the officers' questions did not give them probable cause to arrest him, he would have been free to go. *See McCarty* 468 U.S. at 440, 104 S.Ct. 3138, 82 L.Ed.2d 317.

**{¶14}** Alternatively, Young argues that we should consider the officers' request for identification as a "frisk" because he did not believe he could decline the request. He cites to no authority for us to conclude as much. Because Young was free to refuse the request, we likewise decline to view the officers' request as a "frisk."

**{¶15}** Moreover, even assuming that the officers' only reason for asking to see Young's identification was to check for warrants, our analysis does not change. *See United States v. Young*, 707 F.3d 598, 605-606 (6th Cir.2012) (reasonable to run unrelated warrant check during stop; it may help clear person's name or provide officer's important information about the person). We therefore overrule Young's assignment of error.

**{¶16}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
ANITA LASTER MAYS, J., CONCUR